IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CREST RESOURCES, INC., an Oklahoma corporation,<br><br>    Plaintiff,<br><br>v.<br><br>DAN BLOCKER PETROLEUM CONSULTANTS, INC., a Texas corporation; and WEATHERFORD INTERNATIONAL, INC., a Delaware corporation,<br><br>    Defendants;<br><br>-and-<br><br>WEATHERFORD INTERNATIONAL, INC., a Delaware Corporation,<br><br>    Third-Party Plaintiff;<br><br>v.<br><br>HEXION SPECIALTY CHEMICALS, INC.,<br><br>    Third-Party Defendant. | Case No. CIV-09-766-TCK-PJC |

**PLAINTIFF, CREST RESOURCES, INC.'S, RESPONSE TO DEFENDANT
WEATHERFORD INTERNATIONAL INC.'S MOTION FOR SUMMARY JUDGMENT**

  Plaintiff, Crest Resources, Inc. ("Crest") requests this Court deny Defendant Weatherford International Inc.'s ("Weatherford") Motion for Summary Judgment. In support of its response, Crest shows the Court as follows:

  **Material Facts in Dispute/ Facts Showing Summary Judgment is Improper**

  Weatherford is not entitled to Summary Judgment because the terms and conditions upon which it relies were a failed attempt to modify an existing contract and the limitation of liability

fails the fair notice requirements. As more fully set forth in the additional undisputed facts and this brief, Weatherford's Motion for Summary Judgment should be denied.

Weatherford does not deny wrongdoing; instead, it seeks to limit its liability for its own negligence by attempting to incorporate the Terms and Conditions located on its website by reference. To do so, Weatherford points to a clause on a field ticket which is no more than fine print in small, inconspicuous font directing a party to another unattached document. Just as important as being inconspicuous is the fact that a contract between Crest and Weatherford had already been formed. As such, this was merely an attempted unilateral modification by Weatherford which was un-bargained for and lacked consideration. For the reasons set forth below, Weatherford's attempted modification fails as a matter of law.

## RESPONSE TO WEATHERFORD'S STATEMENT OF UNDISPUTED FACTS

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted in part and DENIED in part.  (*See* Affidavit of Glenn Hudgens, attached hereto as Exhibit 5).
11. Admitted.

12. Admitted in part and DENIED in part. It is admitted that Mr. Brooks had authority to sign the field ticket, but only for the purpose of confirming the cost. Crest denies that Mr. Brooks had authority to bind Crest to the limitation of liability and indemnity provisions after the formation of the original contract entered into on or about March 3, 2009. (*See* Affidavit of Glenn Hudgens, attached hereto as Exhibit 5).

13. Admitted that Weatherford correctly recites the language contained in the field ticket. However, such language is in inconspicuous and small font.

14. Admitted that Weatherford correctly recites the location of the field ticket.

15. Admitted.

16. Admitted that Weatherford correctly recites the language contained in the Terms and Conditions but denies that such terms and conditions are part of the contract.

17. Admitted that Weatherford correctly recites the language contained in the Terms and Conditions but denies that such terms and conditions are part of the contract.

18. Admitted that the quoted language is in bold print and all caps, but denies that such language is in larger font size than the surrounding language.

19. Admitted that Weatherford correctly states the language contained in the Terms and Conditions but denies that such terms and conditions are part of the contract.

20. Admitted that Weatherford correctly recites the language contained in the Terms and Conditions but denies that such terms and conditions are part of the contract.

## ADDITIONAL UNDISPUTED FACTS

1. On or about March 2, 2009, Weatherford made an offer to Crest to frac the Morris 2H Well (the "Subject Well") and such Contract did not contain any mention of the terms and

conditions being part of the contract. (*See* Stimulation Recommendation version 3, attached hereto as Exhibit 1).

2. Weatherford's job proposal was accepted by Crest prior to March 5, 2009. (*See* Deposition of Glen Hudgens, p. 60: 13-22, attached hereto as Exhibit 2) (*See also* Weatherford's Statement of Undisputed Material Facts No. 8).

3. Both parties supplied consideration for the contract as Weatherford promised to perform the frac job and Crest promised to pay for the frac job as evidenced by Crest's acceptance of Weatherford's proposal. (*See* Exhibit 1).

4. A binding contract containing all essential terms was entered into between Crest and Weatherford prior to Weatherford beginning the frac job on the Subject Well. (*See* Deposition of Paul Newman, pp. 36-37: 24-12, attached hereto as Exhibit 3).

5. Dan Blocker was not the agent of Crest but was, instead, simply an independent contractor hired to be a drilling and completion consultant to Crest for the Morris 2H well. (*See* Affidavit of Glenn H. Hudgens, ¶ 2, attached hereto as Exhibit 5)

6. Dan Blocker was not authorized to agree to Weatherford's Terms and Conditions and was not authorized to agree to any limitation of liability on behalf of Crest. Instead, Dan Blocker was authorized only to sign field tickets on behalf of Crest that confirm that the costs were as agreed in the March 2, 2009 Contract with Weatherford. (*See* Exhibit 5, ¶¶ 3, 4)

7. The Terms & Conditions Weatherford seeks to incorporate do not relieve it from liability where Plaintiff's damage was caused solely by Weatherford. (*See* Terms & Conditions, p. 9, attached hereto as Exhibit 4).

8. The field ticket was not presented to or signed by Mr. Brooks until after the Weatherford completed the frac job. (*See* Dan Blocker Petroleum Consultants, Inc.'s Response to Weatherford's Request for Admission No. 1, attached hereto as Exhibit 6).

## ARGUMENT AND AUTHORITIES

**A. The Terms and Conditions are not part of the contract**

The terms and conditions are not part of the contract between Crest and Weatherford.

> "[T]he requirements of a valid contract are: (1) an offer; (2) an acceptance . . . ; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. Consideration is also a fundamental element of a valid contract.

*Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex.App., 2004) (internal citations omitted). Here, there is no doubt that Crest and Weatherford had a binding contract. However, the terms of the contract are not those set forth by Weatherford in its Motion.

On or about March 2, 2009, Weatherford made an offer to Crest to frac the Morris 2H Well (*See* Additional Undisputed Fact No. 1). Thus, there was an offer. Furthermore, the bid was accepted by Crest, as further evidenced by Weatherford's performance of such contract on March 5, 2009. (*See* Defendant's Statement of Undisputed Material Facts No. 7). Glenn Hudgens, President of Crest Resources, approved the March 2, 2009 bid received from Defendant. (*See* Defendant's Statement of Undisputed Material Facts No. 8). Based upon the terms of the contract, Weatherford was to complete the frac job as stated in the March 2, 2009 offer and Crest was to pay Weatherford for such services. (*See* Additional Undisputed Fact No. 3). Thus, there was a meeting of the minds and consideration for the contract.

Based upon the above, a binding contract containing all essential terms was entered into between Crest and Weatherford on March 2, 2009, prior to Weatherford beginning the frac job

on the Subject Well on March 5, 2009. (*See* Additional Undisputed Material Fact No. 4). Of particular significance is the absence of any language attempting to incorporate the Terms and Conditions. (*See* Additional Undisputed Material Fact 1). In addition, Weatherford did not supply Mr. Brooks with the field ticket—and it was not signed—until ***after*** Weatherford had already performed its obligations under the contract. (*See* Additional Undisputed Material Fact No. 8). By its attempt to incorporate the Terms and Conditions into the contract after performance, Weatherford is seeking to modify an already existing contract which contains all the essential terms of the agreement between Crest and Weatherford.

For a modification to be valid, it "independently must satisfy the traditional requirements of a contract-there must be a meeting of the minds supported by consideration." *Stewart & Stevenson, LLC v. Galveston Boats, Inc.*, 2009 WL 3673823 at *9 (Tex.App.) (citing *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W. 3d 695, 702). Furthermore, "[w]hether a contract has been modified depends on the parties' intentions and is a question of fact." *Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 2011 WL 3207773, at *5 (Tex.App.) (citing *Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227, 228–29 (Tex.1986); *Ghidoni v. Stone Oak, Inc.,* 966 S.W.2d 573, 580–81 (Tex.App.-San Antonio 1998, pet. denied) (holding whether document constituted modification of prior lease agreement was fact issue properly presented to jury); *Williams v. L.M.S.C., Inc.,* 2005 WL 2469876, at *6 (Tex.App) (*pet. denied*)).

Here, there was no meeting of the minds or consideration to support a modification of the contract. Regarding consideration, it is an elemental principal in contract law "that 'past consideration' ***is not*** consideration." *Alex Sheshunoff Management Services, L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006) (emphasis added). Here, Weatherford supplied no consideration in exchange for Crest's independent contractor, Danny Brooks, signing the field ticket.

6

Weatherford presented a field estimate to Danny Brooks, a completion consultant employee of Blocker, at the wellsite after the work was completed. (*See* Additional Undisputed Material Fact No. 8). No new consideration was given by Weatherford to Crest and Crest did not agree to the Terms and Conditions contained on Weatherford's website which were attempted to be incorporated by reference into the field ticket. Weatherford simply performed its preexisting obligations under the March 2, 2009 contract.

In *Stewart & Stevenson, LLC*, *supra*, a seller and buyer entered into a valid contract that contained all necessary terms and did not contain an arbitration clause. *Id.* at *8. When seller shipped the goods pursuant to the contract, it also sent an invoice which contained an arbitration clause. *Id.* at *7. Once a dispute arose, the seller attempted to enforce the arbitration clause arguing that, by buyer's paying such invoices, it accepted the written agreement containing the arbitration clause. *Id.* In rejecting this argument, the court stated

> [t]he only mention of an arbitration provision is included in the invoices sent by Stewart & Stevenson ***pursuant to its already existing agreement to provide goods and services*** . . . . Under the facts presented here, these invoices were not individual contracts in and of themselves-they were acknowledgments detailing that portion of the goods and services provided by Stewart & Stevenson in performance of its already existing contract with GPB. *See Tubelite v. Risica & Sons, Inc.,* 819 S.W.2d 801, 804 (Tex.1991) (holding, under Business and Commerce Code, contract was formed before "acknowledgments and statements of account" were sent and stating, "The acknowledgments that followed were not a formal confirmation of parties' agreement because they did not contain the terms specifically negotiated and agreed to by the parties."). This is not enough to show a meeting of the minds between GPB and Stewart & Stevenson on the arbitration agreement contained on the back of the invoices.

*Id.* at *9 (emphasis added). Here, Dan Blocker was not authorized to agree to Weatherford's Terms and Conditions and was not authorized to agree to any limitation of liability on behalf of Crest. Instead, Dan Blocker (acting through Mr. Brooks) simply signed the field ticket on behalf of Crest to confirm that the costs were as agreed in the March 2, 2009 contract. (*See* Additional

7

Undisputed Material Fact No. 6). The price on the field ticket exceeded the contract price of $224,911.97 by approximately $1,000 because some additional chemicals were used by Weatherford on the fracture stimulation of the Subject Well. As such, the field ticket is not a contract and the terms and conditions are not included in the contract between Crest and Weatherford. *see The Daneshjou Company, Inc. v. Goergen*, 2008 WL 3171256 (Tex.App.) (noting that "[a]n inconspicuous indemnity provision simply added to a check for payment after formation of a contract, without more, is unenforceable").

### B. Even assuming, *arguendo*, that the Field Ticket constituted part of the contract, the terms and conditions are not incorporated therein.

Even assuming that the field ticket is part of the contract, Weatherford's attempt to incorporate the Terms and Conditions containing the indemnity and limitation of liability fails. Under Texas law, for an indemnity or release agreement to be enforceable, it must meet the fair notice requirement. *Dresser Indus. Inc. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1992). "The fair notice requirements include the express negligence doctrine and the conspicuousness requirement. "The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. The conspicuous requirement mandates 'that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Id.*

Here, Weatherford's attempt to incorporate the indemnity and limitations of liability fail the conspicuousness requirement. In *ALCOA v. Hydrochem Indus. Services, Inc.*, 2005 WL 608232 (Tex.App.), a party incorporated by reference a document labeled "SUPPL. TERMS & CONDITIONS FORM R-380-1" on the face of a purchase order. *Id.* at *9. The court stated that

"whether the heading **"LIABILITY"** is conspicuous enough to attract attention to a reasonable person looking at Form R-380-1 *is inconsequential if nothing on the face of the purchase order indicates that a reasonable person should look at Form R-380-1*." *Id.* Here, the reference to the Terms and Conditions on the field ticket—referring you to a website to read the same—is merely in fine print and the same type and style as the surrounding words. This is even more inconspicuous than the situation in *ALCOA* as the purchase order there contained the reference to the terms and conditions in large capital letters. *Id.* Here, there is simply nothing on the face of the field ticket to alert a reasonable person to the risk-shifting provisions in the terms and conditions. As noted by the court in *ALCOA*, "[t]he intent of the fair notice requirements is defeated if parties are allowed to remove risk-shifting clauses to secondary documents that are only inconspicuously referenced on the face of the contract." *ALCOA*, 2005 WL 608232 at *9.

### C. Even Assuming, *arguendo*, that the terms and conditions are incorporated, the language of such terms and conditions do not relieve Weatherford of Liability when it is the sole cause of Plaintiff's damages.

Lastly, even assuming, *arguendo*, that the terms and conditions are incorporated, Weatherford failed to include the provision in its terms and conditions which states as follows:

> CUSTOMER'S INDEMNITY OF WEATHERFORD GROUP: CUSTOMER WILL DEFEND, INDEMNIFY, RELEASE, AND HOLD WEATHERFORD GROUP HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS BY CUSTOMER OR ANY OTHER PERSON OR ENTITY AGAINST WEATHERFORD GROUP OF EVERY KIND OR CHARACTER WHATSOEVER . . . ARISING IN CONNECTION WITH . . . DESTRUCTION OR ECONOMIC LOSS (INCLUDING, BUT NOT LIMITED TO . . . DAMAGE TO RESERVOIR, FORMATION, SUBSURFACE PROPERTY OR PROPERTY RIGHTS) BECAUSE OF LEASE, RENTAL, PURCHASE, DELIVERY, INSTALLATION, POSSESSION, OPERATION, USE, CONDITION OR RETURN OF EQUIPMENT, WHETHER BY WEATHERFORD GROUP, CUSTOMER, OR ANY OTHER PERSON OR ENTITY, IRRESPECTIVE OF WHETHER WEATHERFORD GROUP MAY BE ALLEGED OR PROVEN TO HAVE BEEN NEGLIGENT . . . OR OTHERWISE LEGALLY LIABLE . . .

**BUT EXCEPTING WHERE THE DAMAGE, INJURY, OR DEATH WAS CAUSED BY THE SOLE NEGLIGENCE OF WEATHERFORD.**

(*See* Exhibit 3, p. 9). Here, Crest alleges in its complaint that "[a]s a direct result of Weatherford's negligence, Plaintiff incurred damages because the Well has been improperly fracture treated and completed, and the Well cannot be repaired." (Complaint, ¶ 38). In the case at bar, Plaintiff clearly alleges some negligence is exclusively Weatherford's. Further, even if the negligence cannot be precisely divided, the apportionment of negligence, if any, between the various Defendants is a question of fact, and it could be found that Weatherford was the sole cause of Crest's damages. As such, summary judgment is inappropriate.

## CONCLUSION

Each of Weatherford's contentions in its Motion for Summary Judgment are based upon the Terms and Conditions on its website. Weatherford's attempt to incorporate its Terms and Conditions in the contract with Crest is ineffective as it was a modification and no consideration was supplied for such modification. Whether a modification was entered into is a question of fact and Weatherford has failed to set forth any facts indicating the parties' intention to modify its preexisting contract. Further, the language which purports to incorporate the Terms and Conditions is inconspicuous and fails the fair notice requirements. Lastly, the Terms and Conditions specifically state that the limitation of liability and indemnity clause do not apply where the damages sustained by Plaintiff resulted from the sole negligence of Weatherford.

Because Weatherford's Motion for Summary Judgment is based entirely on the invalid modification, Weatherford's Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

s/Richard L. Rose
Gregory L. Mahaffey, OBA #5626
Richard L. Rose, OBA #20105
MAHAFFEY & GORE, PC
300 N.E. 1st Street
Oklahoma City, OK 73104
Telephone: 405-236-0478
Facsimile: 405-236-1520
E-mail: *gmahaffey@mahaffeygore.com*
E-mail: *rrose@mahaffeygore.com*
**Attorneys for Plaintiff**
**Crest Resources, Inc.**

## **CERTIFICATE OF MAILING**

  I hereby certify that on August 12, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Monty B. Bottom, foliartfirm@oklahomacounsel.com

Jimmy Goodman, jimmy.goodman@crowedunlevy.com

Donald A. Lepp, hm@HoldenLitigation.com

Jason Traverse Rogers, foliartfirm@oklahomacounsel.com

Michelle B. Skeens, hm@holdenoklahoma.com

Evan Grant Ellis Vincent, evan.vincent@crowedunlevy.com

                s/Richard L. Rose
                Richard L. Rose