# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CREST RESOURCES, INC., an Oklahoma corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 09-CV-766-TCK-PJC<br>) |
| DAN BLOCKER PETROLEUM CONSULTANTS, INC., a Texas corporation, and WEATHERFORD INTERNATIONAL, INC., a Delaware corporation, | )<br>)<br>)<br>)<br>) |
| Defendants; | )<br>) |
| -and- | )<br>) |
| WEATHERFORD INTERNATIONAL, INC., a Delaware Corporation, | )<br>)<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| HEXION SPECIALTY CHEMICALS, INC., | )<br>) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

Before the Court are Third-Party Defendant Hexion Specialty Chemical's Motions for Summary Judgment Against Third-Party Plaintiff Weatherford International, Inc. (Doc. 113) and Third-Party Plaintiff Dan Blocker Petroleum Consultants, Inc. (Doc. 112).

**I.    Factual Background**

Plaintiff Crest Resources, Inc. ("Crest"), an Oklahoma corporation, owns oil and gas leases and operates the Morris 2H well ("well") located in Red River County, Texas. Crest contracted with Defendant Dan Blocker Petroleum Consultants, Inc. ("Blocker") to supervise field operations at the

well. With regard to completion of the well, Crest primarily consulted with Blocker employee Danny Brooks ("Brooks"). On behalf of Crest, Brooks solicited bids for completion of a fracture stimulation job ("frac job") on the well. On or around March 2, 2009, Defendant Weatherford International, Inc. ("Weatherford") submitted a third and final version of a "stimulation recommendation" for the well, which constituted a bid on the frac job. Glenn Hudgens ("Hudgens"), President of Crest, accepted the bid. On or around March 5, 2009, Weatherford performed the frac job, including purchasing and providing certain materials. Following completion, Brooks (who was present at the well site) signed a Weatherford-generated document entitled "Field Estimate," which references Weatherford's standard terms and conditions set forth on a website ("Terms and Conditions"). The Terms and Conditions referenced in the Field Estimate contain certain release and indemnity provisions.

In its Complaint filed in December 2009, Crest alleges that the well is irreparably damaged and must be re-drilled. Crest asserts four causes of action against Weatherford and two against Blocker: (1) Weatherford supplied and used defective stimulation fluids and flow back fluids while performing the frac job and is liable for Crest's damages under theories of defective product/manufacturer's product liability ("product liability claim");[1] (2) by selling defective products and using them on the well, Weatherford breached an implied warranty of merchantability ("implied warranty claim"); (3) Weatherford was negligent in its design, implementation, and supervision of the frac job ("negligence claim"); (4) Blocker breached its contract with Crest "by failing to provide prudent engineering and competent expertise in designing and implementing fracture stimulation of

---

[1] In its factual background section, Crest further alleges that "Weatherford caused the cleanouts when its Proppant did not set up as advertised." (Compl. ¶ 26.) Thus, although the product liability claim refers to defective stimulation fluids, the Complaint also contains allegations regarding Weatherford's use of a defective "Proppant." As discussed below, the allegedly defective proppant is the subject of Weatherford's Third-Party Complaint.

2

the well and in failing to provide . . . competent personnel to fracture stimulate and complete the well" (*id.* ¶ 40); (5) Blocker was negligent in performing certain "cleanouts" with fresh water; and (6) Crest is entitled to declaratory judgment that it does not owe Weatherford the invoiced amount of $230,968.28 for the materials and services provided in connection with the frac job.

Weatherford filed a counterclaim against Crest for the payment of unpaid invoices for the frac job totaling $230,968.28. Weatherford also filed a Third-Party Complaint against Hexion Speciality Chemicals, Inc. ("Hexion"), alleging that Hexion was the designer and manufacturer of the allegedly defective proppant used during the frac job and seeking "indemnity and/or contribution" for any sums for which "Weatherford may become liable." (Weatherford's Third-Party Compl. Against Hexion, Doc. 33.) Blocker also filed a Third-Party Complaint against Hexion, alleging that "Hexion manufactured the product used in the fracing" and that Hexion should be liable to Blocker for sums "over and above Blocker's pro rata share of the damage caused by the actions of Hexion." (Blocker's Third-Party Compl. Against Hexion, Doc. 40.)

On January 14, 2011, in accordance with the scheduling order then in place, Weatherford moved for summary judgment on all claims asserted against it. Weatherford argued that the Terms and Conditions precluded Crest's product liability and negligence claims and that the implied warranty claim was legally infirm. Weatherford contended that the Field Estimate was the contract, the Field Estimate incorporated the Terms and Conditions, and Brooks had actual and apparent authority to sign the Field Estimate on behalf of Crest. In response, Crest argued that contract formation occurred upon Hudgens' acceptance of the final frac job bid and that Brooks lacked actual or apparent authority to modify the contract with the Terms and Conditions referenced in the Field Estimate.

For purposes of summary judgment, the Court assumed without deciding that (1) the Field Estimate was the relevant contract, and (2) the Terms and Conditions were incorporated therein. *Crest Res., Inc. v. Dan Blocker Petroleum Consultants, Inc.*, 865 F. Supp. 2d 1113, 1119 (N.D. Okla. 2012).[2] The Court held that Weatherford had not established, as a matter of law, Brooks' actual or apparent authority to bind Crest to the Terms and Conditions. In accordance with *In Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920 (Tex. App. 2011),[3] the Court found that Brooks' proven authority to sign the Field Estimate did not automatically result in actual or implied authority to enter into the Terms and Conditions. *Crest Res., Inc.*, 865 F. Supp. 2d at 1122. Instead, such inquiry required analysis of numerous facts and circumstances upon which the record was silent. *See id.* ("Given the numerous other circumstances that must be considered and Hudgens's affidavit denying that Brooks had authority to agree to the Terms and Conditions, Weatherford is not entitled to summary adjudication on the question of actual express or implied authority."). The Court also held that fact questions existed as to apparent authority, *i.e.*, whether Weatherford could have reasonably believed Brooks had authority to enter into the Terms and Conditions on behalf of Crest. *See id.* (denying summary judgment as to apparent authority question because "Weatherford has failed to present evidence establishing that agreeing to the Terms and Conditions was a duty ordinarily entrusted to one occupying Brooks' position"). Based on Crest's failure to respond and the arguments made by Weatherford, the Court granted summary judgment to Weatherford on Crest's implied warranty claim.

---

[2] Although the Court explained that contract formation issues could be addressed by subsequent dispositive motions if necessary, *see id.* n.6, no such motions were filed.

[3] All parties agreed that Texas law governed the issues presented in the motion for summary judgment.

4

Following entry of the Court's Order in March 2012, the parties engaged in protracted discovery. The Court granted numerous unopposed motions to amend the scheduling order, and entered an Amended Scheduling Order setting a dispositive motion deadline of May 14, 2013. Neither Crest, Weatherford, nor Blocker elected to file motions for summary judgment. Third-Party Defendant Hexion, however, filed motions for summary judgment against Blocker and Weatherford, which are currently before the Court. A jury trial is set for April 21, 2014.

## II.    Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III.   Hexion's Motion for Summary Judgment Against Weatherford

In its Third-Party Complaint, Weatherford asserts a claim for "indemnity and/or contribution" against Hexion:

> Weatherford files this Third-Party Complaint *seeking indemnity and/or contribution* from Hexion because on December 8, 2009, plaintiff herein initiated the instant action alleging, among other things, that *Weatherford had sold plaintiff a defective product used in fracturing a well owned and operated by plaintiff. The product in question*

> *was designed and manufactured by Hexion, and is a resin coated sand which is injected into hydrocarbon formations to aid in the completion and production phases of oil and gas wells.*[4]
>
> . . .
>
> Weatherford denies it was guilty of any negligence or strict liability contributing to or independently causing the harm complained of by plaintiff. However, in the event a finding of liability against Weatherford is made, Weatherford is entitled to judgment over and against Hexion for indemnity and/or contribution for any and all sums for which Weatherford may be adjudged liable.

(Doc. 33, at 2 (emphases and footnote added).) In response to Hexion's motion for summary judgment, Weatherford further explained that (1) it seeks "contribution from Hexion should Weatherford be found negligent for having chosen and/or used Siberprop based upon its reliance on Hexion in having made that choice;" and (2) it seeks "indemnity from Hexion as the designer, manufacturer, and seller" of the SiberProp should it be found liable on the product liability claim. (Resp. to Mot. for Summ. J. 8.)[5] Therefore, the Court construes Weatherford's Third-Party Complaint as seeking: (1) contribution, if Weatherford is found liable for negligence claim; and (2) common-law indemnity, if Weatherford is found liable under a product liability theory. Hexion seeks summary judgment on both claims. In the summary judgment briefing before the Court, all parties

---

[4] This product is called SiberProp.

[5] This explanation is consistent with Weatherford's discovery responses to Hexion:

> Weatherford's contention is that [Crest] is alleging that the SiberProp did not set up like it was supposed to. To the extent that is a claim by Plaintiff that the SiberProp is defective, then it is a claim Hexion, as the product designer, manufacturer, and seller, should answer to. To the extent Plaintiff's claim is that SiberProp was an inappropriate product for use in the subject application, Weatherford further contends that Hexion was informed about the application and advised Weatherford that SiberProp was appropriate for use.

(Ex. 1 to Hexion's Mot. for Summ. J.)

cited and relied upon Texas law.  Therefore, the Court has applied Texas law in deciding these motions.

### A.    Contribution

Weatherford seeks contribution for Crest's negligence claim under Texas' statutory scheme governing "proportionate responsibility" among joint tortfeasors. TEX. CIV. PRAC. & REM. CODE ANN. § 33.001-33.017 (Vernon 2008);[6] *see also Cressman Tubular Prods. Corp. v. Kurt Wiseman Oil & Gas, Ltd.*, 322 S.W.3d 453, 459-60 (Tex. App. 2010) (explaining that proportionate responsibility statute generally applies to claims sounding in tort but not claims sounding in contract). The statutory scheme provides "a right of contribution" among those found jointly and severally liable to a plaintiff for the same harm.  CIV. PRAC. & REM. § 33.015(b) ("As among themselves, each of the defendants who is jointly and severally liable under Section 33.013 is liable for the damages recoverable by the claimant under Section 33.012 in proportion to his respective percentage of responsibility.").[7]

In this case, Crest did not sue Hexion directly.  Nor did any defendant seek to designate Hexion as a "responsible third party."  *See* CIV. PRAC. & REM. § 33.004(a)  ("A defendant may seek to designate a person as a responsible third party by filing a motion for leave to designate that person as a responsible third party."); *In re Arthur Andersen LLP*, 121 S.W.3d 471, 482 n.33 (Tex.

---

[6] In its response brief, Weatherford cited this statutory scheme as the basis for its contribution claim.  (*See* Weatherford's Resp. to Mot for Summ. J. 7 (relying on TEX. CIV. PRAC. & REM. CODE ANN. § 33.011(a).)

[7] The concept of "contribution" under Texas law is in accord with the Restatement (Second) of Torts, which provides that a right of contribution exists "when two or more persons become liable in tort to the same person for the same harm," and when one tortfeasor has "discharged the entire claim for the harm by paying more than his equitable share of the common liability."  Restatement (Second) of Torts § 886A.

App. 2003) (explaining three-part test for such designation). Therefore, Hexion is deemed a "contribution defendant" under the statutory scheme. *Id.* § 33.016(a) ("In this section, 'contribution defendant' means any defendant, counterdefendant, or third-party defendant from whom any party seeks contribution with respect to any portion of damages for which that party may be liable, but from whom the claimant seeks no relief at the time of submission."); *see also In re Arthur Andersen LLP*, 121 S.W.3d at 482 n.33 (explaining differences between "responsible third parties" and "contribution defendants" under statutory scheme).

> Claims against contribution defendants are governed by the following statute:
>
> (b) Each liable defendant is entitled to contribution from each person who is not a settling person and who is liable to the claimant for a percentage of responsibility but from whom the claimant seeks no relief at the time of submission. A party may assert this contribution right against any such person as a contribution defendant in the claimant's action.
>
> (c) The trier of fact shall determine as a separate issue or finding of fact the percentage of responsibility with respect to each contribution defendant and these findings shall be solely for purposes of this section and Section 33.015 and not as a part of the percentages of responsibility determined under Section 33.003. Only the percentage of responsibility of each defendant and contribution defendant shall be included in this determination.
>
> (d) As among liable defendants, including each defendant who is jointly and severally liable under Section 33.013, each contribution defendant's percentage of responsibility is to be included for all purposes of Section 33.015. The amount to be contributed by each contribution defendant pursuant to Section 33.015 shall be in proportion to his respective percentage of responsibility relative to the sum of percentages of responsibility of all liable defendants and liable contribution defendants.

CIV. PRAC. & REM. § 33.016. In accordance with § 33.016(c), "[t]he jury determines the percentage of responsibility of a 'contribution defendant' separately for purposes of contribution to

the defendants, and not as part of the global apportionment of responsibility." *In re Arthur Andersen LLP*, 121 S.W.3d at 482 n.33.[8]

As with contribution among jointly liable defendants named by the plaintiff in the original action, a defendant's right to seek contribution from a "contribution defendant" is "derivative" of the plaintiff's right to recover from the contribution defendant. *See Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992) ("A defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought."); *Willis v. Bay North Homeowners Ass'n, Inc.*, No. 03-04-00453-CV, 2005 WL 1845663, at *4 (Tex. App. Aug. 3, 2005) (extending this principle to claim against "contribution defendant"). Thus, a contribution defendant is not liable unless the plaintiff "could have brought a direct claim" against it. *See id.* at *6 (analyzing whether the plaintiffs could have brought a direct claim against the contribution defendant or whether such claim was legally barred due to lack of duty).

---

[8] The "global apportionment of responsibility" refers to a jury's original apportionment of liability among four statutorily defined groups:

> (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, *for the following persons* with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:
> (1) each claimant;
> (2) each defendant;
> (3) each settling person; and
> (4) each responsible third party who has been designated under Section 33.004.

CIV. PRAC. & REM. § 33.003 (emphasis added).

For purposes of summary judgment, the following facts are either undisputed or construed in the light most favorable to Weatherford. In March 2009, Hexion sold Weatherford 390,000 pounds of SiberProp for use on the Morris 2 frac job. At the time of sale, Hexion published a "Technical Data Sheet" for SiberProp, which stated that the suitable applications for SiberProp were "[a]t closure stress of 500 to 8000 psi." (Ex. 2 to Weatherford's Resp. to Mot. for Summ. J.) A Weatherford employee who selected or assisted in selecting Siberprop, Paul Newman ("Newman"), believed that the anticipated "closure stress" for the relevant frac job was "roughly 1300 psi." (Newman Aff. ¶ 7, Ex. 1 to Weatherford's Supp. Br.) Approximately one month after the frac job, Hexion changed the Technical Data Sheet for Siberprop to state that its suitable applications were "[a]t closure stress of 2,000 to 8,000 psi." (Ex. 4 to Weatherford's Resp. to Mot. for Summ. J.) According to Newman, he would not have selected or recommended SiberProp for the frac job under the revised version because the anticipated closure pressure was now below the recommended range. (Newman Aff. ¶ 11.) Hexion has not offered any explanation for this alteration.

Weatherford asserts that "if Weatherford is determined to have been negligent in choosing, recommending, getting approved, and using SiberProp in the first place, then Hexion should likewise bear its share of that liability in contribution." (Weatherford's Supp. Br. 2.) More specifically, Weatherford argues:

> Hexion changed the closure stress values in the technical data sheet a month after the subject frac job for a reason related to the properties and performance of the product, that Hexion intended and knew the data in the technical data sheet would be relied upon, and that inaccurate data could have detrimental consequences. Hexion's position that Weatherford is not entitled to contribution because Hexion disclaimed certain warranties is without merit.[9] While the language relied upon by Hexion

---

[9] The disclaimer on the relevant Technical Data Sheet provides:

>   disclaims certain legally imposed warranties, the provision itself states that excepted from such disclaimer is that "the product shall conform to contracted specification." *The closure stress is one of the contracted specifications* and if it is determined that the SiberProp "didn't set up like it was supposed to" and that Weatherford was negligent for having chosen SiberProp in the first place, then Weatherford will be entitled to contribution from Hexion based upon Mr. Newman's detrimental reliance on the specifications in the technical data sheet.

(*Id.* 4 (emphasis and footnote added).)

The question before the Court is whether Crest has any viable tort claim against Hexion, such that Hexion should be considered jointly and severally liable for Crest's damages. Based on Weatherford's characterization, the Court concludes that: (1) the theory of liability being asserted is premised upon express warranty, *i.e.*, a "contracted specification," regarding the closure stress range; (2) claims for breach of express warranty sound in contract and therefore do not create a right of "contribution" under Texas' statutory scheme.

First, in order to avoid the "Disclaimer" on the Technical Data Sheet, Weatherford has admitted that its theory of Hexion's liability to Crest is that Hexion inaccurately portrayed a product specification in a written document that induced Weatherford's purchase. Such a claim cannot be

---

>   DISCLAIMER
>
>   The information provided herein was believed by [Hexion] to be true and accurate at the time of preparation or prepared from sources believed to be reliable, but it is the responsibility of the user to investigate and understand other pertinent sources of information, to comply with all laws and procedures applicable to the safe handling and use of the product and to determine the suitability of the product for its intended use. [HEXION] MAKES NO WARRANTY, EXPRESS OR IMPLIED, CONCERNING ANY PRODUCT OR THE MERCHANTABILITY OF FITNESS THEREOF FOR ANY PURPOSE OR CONCERNING THE ACCURACY OF ANY INFORMATION PROVIDED BY HEXION, except that the product shall conform to contracted specifications, and that the product does not infringe any valid United States patent.

(Ex. 2 to Weatherford's Resp. to Mot. for Summ. J.)

11

construed as "negligence" or any other tort; it must be construed as breach of an express warranty set forth on the Technical Data Sheet regarding the properties of SiberProp. *See Conquest Drilling Fluids, Inc. v. Tri-Flo Intern., Inc.*, 137 S.W.3d 299, 310 (Tex. App. 2004) (affirming grant of summary judgment where negligence and negligent misrepresentation claims "were in substance contract claims relabeled as torts").[10]

Second, "express-warranty claims sound in contract" and are therefore excluded from Texas' proportionate-responsibility statute. *Cressman Tubular Products Corp.*, 322 S.W.2d at 460 (citing *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 57 (Tex. 2008)). In *Cressman*, the Texas Court of Appeals rejected the argument that "breach of an express warranty sounds in tort when the breach causes damage to or loss of use of property other than the property that is the subject of the contract." *Id.* The *Cressman* case involved facts similar to those presented here – namely, damages to the plaintiff's oil well following a fracture stimulation job, some of which were allegedly caused by defective tubing string used during the job. The *Cressman* court found that the trial court properly disregarded any proportionate-responsibility finding in connection with the tubing string distributor's breach of an express warranty. *See id.* at 460. Because neither party cited *Cressman*, the Court will permit Weatherford to present any additional cases or arguments in support of its contribution claim at the pretrial conference. However, unless the Court is persuaded otherwise, the jury will not be instructed on "contribution" in the event Weatherford is found liable for negligence.

---

[10] It appears that Crest, even if not in privity with Hexion, could assert a breach of express warranty claim, subject to any disclaimers entered into by Weatherford and Hexion. *See Welwood v. Cypress Creek Estates, Inc.*, 205 S.W.3d 722, 729 (Tex. App. 2006) ("If a third party can sue a seller for breach of express warranty, as we must assume for this appeal, the seller's disclaimers of warranties apply to the third party.").

### B.     Indemnity

Weatherford seeks common-law indemnity from Hexion in the event it is found liable on Crest's product liability claim. In contrast to contribution, which shifts only a proportionate share of loss from one tortfeasor to another, indemnity generally "shifts the entire loss from one tortfeasor to another." Restatement (Second) of Torts § 886A, cmt. l. Contribution and indemnity are "mutually exclusive remedies" because "when there is a right of indemnity, it controls, and neither tortfeasor has a right of contribution against the other." *Id.* Under Texas common law, "a person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to full indemnity from the other for expenditures properly made to discharge the liability." *Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex. 1990).

In the parties' Proposed Pretrial Order, Crest continues to assert a product liability claim against Weatherford based on the theory that the SiberProp was defective.[11] Hexion moves for summary judgment on the indemnity claim on grounds that the SiberProp was not defective as a matter of law. In its response, Weatherford agrees that Crest does not have sufficient evidence to maintain a product liability claim regarding SiberProp. Crest did not respond to Hexion's motion for summary judgment or refute Hexion's evidence. Without the benefit of Crest's presentation of its own evidence, the Court does not have a complete picture of the potential trial evidence. Crest should have responded to Hexion's motion, which turns on whether Crest's product liability claim is viable, out of an abundance of caution. However, in the interest of adjudicating the product

---

[11] Hexion and Weatherford's prior arguments regarding this claim being moot or abandoned by Crest need not be addressed.

liability claim based on its merits rather than on a confessed motion, the Court will allow Crest to respond to this motion out of time. Crest should be prepared, at the pretrial conference, to discuss and explain its evidence in support of this claim. If necessary, the Court will permit additional briefing following the conference. Hexion will be given a full opportunity to address Crest's arguments and/or evidence on this claim during the conference and, if necessary, in a reply brief.

### IV.     Hexion's Motion for Summary Judgment Against Blocker

Hexion also moved for summary judgment on Blocker's Third-Party Complaint. Blocker failed to respond to the motion. When a dispositive motion is unopposed, a court may grant summary judgment if the "moving party has met its initial burden of production under Rule 56 and demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003). Upon review of the facts and arguments in Hexion's motion, the Court finds that Hexion is entitled to judgment as to any and all claims for indemnity and contribution asserted by Blocker. Unlike with Weatherford, Crest does not allege any product liability claim against Blocker. Further, Hexion has adequately demonstrated that it has no connection to Blocker's allegedly negligent action of injecting fresh water into the wells.

## V. Conclusion

Third-Party Defendant Hexion Specialty Chemical's Motion for Summary Judgment Against Third-Party Plaintiff Weatherford International, Inc. (Doc. 113) is held in abeyance, with further arguments to be permitted at the pretrial conference. Hexion's Motion for Summary Judgment Against Third-Party Plaintiff Dan Blocker Petroleum Consultants, Inc. (Doc. 112) is GRANTED.

SO ORDERED this 7th day of March, 2014.

*Terence C. Kern*

**TERENCE C. KERN**
**United States District Judge**